IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARIO RIVERA,
        Petitioner,

vs.                              Case No.  5:04cv379/LAC/MD

JOHN ASHCROFT, TOM RIDGE,
JAMES D. GOLDMAN et al.
        Respondent,

### REPORT AND RECOMMENDATION

     This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 1).  The respondent filed an answer (doc. 17), and petitioner filed a reply (doc. 19).  After a thorough review of the record, it is the opinion of the undersigned that the petition for writ of habeas corpus should be denied.

     <u>Background and Analysis</u>

     Petitioner is a detainee who has been in the custody of the Bureau of Immigration and Customs Enforcement ("BICE") since December of 2000. He states in his petition that he challenges not his removal, but rather his indefinite and therefore unlawful detention.  He maintains that he has cooperated fully with all efforts by the BICE to remove him from the United States, and thus that he must be released.

     Petitioner asserts that he is a native and citizen of Cuba, who was born in Provincia de Oriente on October 1, 1969.  He states that he left Cuba with his mother

in 1972 and emigrated to Spain through the "Bridge of Freedom" agreement between the two countries. Petitioner states that he and his mother moved illegally to France in 1975, and that he never adjusted his status in that country.

On March 8, 1999, petitioner entered and was admitted to the United States under the Visa Waiver Pilot Program using the name and passport of Khalid Dennoul, a Danish citizen. He claims that he did not read or write English at the time, and was assisted in filling out the relevant immigration forms by a flight attendant. Petitioner claims that he stayed beyond his June 1999 admission date because he was robbed in Miami and lost his return plane ticket and the passport he came with.[1]

Petitioner was convicted of petit theft in Orange County Florida in 1999, and served a thirty day sentence. The BICE learned of petitioner's illegal status, and he was taken into BICE custody after serving that sentence. Petitioner states that after interviews with BICE agents in December of 2000, he was lured into signing a Form I-273, "record of deportable/inadmissible alien." Petitioner does not deny having concealed his true identity from BICE agents after having been told that he would be deported to Denmark within one week. He maintains that he did so out of his fear of being deported to his native Cuba, that he had left at the age of three. (Doc. 1, memo at 2).

Petitioner was put in contact with the Danish Consulate in order to secure travel documents. During a January 10, 2001 phone conversation with the Consulate he admitted that he was not Khalid Dennoul, but that he had purchased the passport bearing this name. In the following weeks, petitioner states that he admitted his true name and national origin to the BICE officers, but they did not believe him. Because the BICE was unable to ascertain his identity or obtain travel documents, petitioner was transferred to a series of different detention facilities. In August of 2001 he filed

---

[1] Elsewhere in the record, petitioner is quoted as having come to this country with the intent to remain. (Doc. 17, exh. D).

*Case No: 5:04cv379/LAC/MD*

a petition for habeas corpus challenging his detention, which was denied. (Doc. 1, memo at 3-4; doc. 18, exh. L, M, N, discussed at greater length, below).

Petitioner contends that he has made and continues to make good faith efforts to obtain travel and other documents to facilitate his deportation, without success. The difficulties he confronts are multiple. First, petitioner maintains that he left his native Cuba over 30 years ago at the age of three without any personal papers. Next, he does not know his exact place of birth, and the province where he claims to have been born has been separated into four or five provinces. (Doc. 1, exh. 1). Finally, petitioner asserts that his mother, who would presumably be able to provide more detailed information, is deceased.[2] Petitioner has written to the Swiss Embassy in an attempt to secure a copy of his birth certificate (doc. 1, exh. 1), as well as various branches of the Cuban government (doc. 1, exh. 7). He has also sent letters to the embassies of the Netherlands, Switzerland, Mexico, The Czech Republic, Belgium, Spain and France asking them to accept him as a refugee. (Doc. 1, exh. 2, 8; doc. 19, exh. 1, 2). The requests went unanswered or were denied.

On October 9, 2003, petitioner was served with a notice of failure to comply pursuant to 8 C.F.R. 241.4(g), dated August 26, 2003. (Doc. 1, exh. 9). By this notice, petitioner was advised that he would not be released from BICE custody. It reflects that on January 24, 2003 and February 12, 2003, he was made aware via form I-229(a) and Instruction Sheet to Alien, of specific requirements he needed to complete to assist the BICE in ascertaining his identity and was given 30 days to comply with this obligation to assist in obtaining a travel document. Importantly, the notice reflects that although petitioner had filed for documents from Cuba, there was evidence which would lead a reasonable person to believe that he was not Cuban

---

[2]The file contains inconsistent information in this regard. In a 2004 letter to Phyllis Oakley, Assistant Secretary for Population Refugee and Migration Affairs, petitioner states that his mother passed away in 1988. (Doc. 19, exh. 2). However, in a letter sent in May of 2002 to the Swiss embassy, petitioner states that his parents are separated. (Doc. 19, exh. 1 at 1).

and that he had failed to give his true and correct name.[3]  Because of this, the BICE concluded that petitioner had failed to comply with his obligation and was acting to prevent his removal from the United States.  The removal period was extended, which had the effect of retaining petitioner in BICE custody until he demonstrated that he was making reasonable efforts to comply with the order of removal, and that he was cooperating with BICE efforts to remove him.

Petitioner contends that he has, in essence, done his part, but that the BICE has not met its burden of showing that he is significantly likely to be removed in the reasonably foreseeable future.  Petitioner further argues that he must be released because there are only four circumstances in which an alien may remain in detention even though undeportable: (1) where the alien has a highly contagious disease; (2) where serious adverse foreign policy consequences would result from the alien's release; (3) if the alien has been detained on account of security or terrorism concerns; or (4) where the alien is determined to be "specially dangerous."  See 8 C.F.R. § 241.14(b)(c)(d) and (f).  None of these categories would appear to apply to the petitioner.  For all of the foregoing reasons, he therefore seeks his immediate release from detention.

Respondent maintains that petitioner's presentation of the facts is incomplete, particularly with respect to petitioner's attempts to obfuscate the issue of his true identity.  The Record of Deportable/Inadmissible Alien filled out on or about December 29, 2000 reflects that petitioner told immigration officials he was

---

[3]In support of his claim for removal, he submits what he claims is a certificate from the Cuban Consular Affairs office in Washington that "states his Cuban citizenship." (Doc. 19 at 4).  Petitioner is described as a Cuban citizen in the document to which he refers, the original of which is written in Spanish. (Doc. 19, exh. 1 at 4).  However, the context of the certification, that petitioner has requested a copy of his birth certificate through the Embassy of Switzerland, Cuban Interest Section, Consular Office, suggests that the conclusion about petitioner's citizenship was based entirely on his self-description in his request.  Petitioner stating that he is Cuban no more makes this so than did his previous assertions of Danish, French or Spanish Citizenship.  In the appellate decision affirming the denial of petitioner's previous habeas petition, the court refers to "alleged documentation showing his Cuban citizenship."  (Doc. 18, exh. N at 7, n.1).  No other documentation allegedly showing petitioner's citizenship has been submitted.

*Case No: 5:04cv379/LAC/MD*

born Khalid Dennoul on May 9, 1962 in France but moved to Denmark in 1992, becoming a citizen of that country in 1997. (Doc. 17, exh. C). He provided the names of his father, mother and spouse, who he identified as being of French, Algerian and Danish nationality respectively.  He admitted that he had come to the United States with the intent of remaining.  Based on the information he provided, petitioner was ordered removed from the United States on December 29, 2000 (doc. 17, exh. D).

The BICE contacted the Danish Consulate to secure emergency travel documents and arrange for petitioner's deportation to Denmark. (Doc. 18, exh. E). However, the Danish Vice Consul responded on January 12, 2001 indicating that after conversations with the petitioner, he admitted that he was not Khalid Dennoul, but that he had purchased the passport in question. (Doc. 18, exh. F).  Petitioner told the Vice Consul that he had been born in France and had resided illegally in Denmark for two years.

After the BICE learned that petitioner was not a Danish citizen, then-INS Special Agent Donald R. Buechner met with petitioner from January 24th through January 26, 2001 to attempt to ascertain his true nationality and identity.  During the course of these interviews, petitioner variously claimed to be from France, Spain and Cuba. (Doc. 18, exh. G).  The February 8, 2001 memo reflects that the interviewer surmised that petitioner's claim of Cuban nationality was based on his recent exposure to the large Cuban population at Bay County Jail.  He also noted that petitioner provided his name, but that when questioned about his name, appeared to have difficulty recalling it.  Special Agent Buechner placed the petitioner in contact with the Consulate of France, with no success, and attempted to contact the Cuban Interest Section[4] regarding petitioner's situation.  With respect to petitioner's identity, the memo reflects:

> **SUBJECT appears to speak at least four languages: English, Spanish, French, and Arabic. However, it is the professional opinion of Reynaldo**

---

[4] It is not clear to which Cuban Interest Section Agent Buechner refers.

*Case No: 5:04cv379/LAC/MD*

> Blackman, veteran Detention Enforcement Officer and a native speaker in the Spanish language, that SUBJECT'S dialect is wrong for a Cuban national, and that SUBJECT, though fluent in Spanish, speaks Spanish with a French accent. Opinions on SUBJECT'S true nationality have centered on North Africa, but with SUBJECT'S limited credibility, neither his true identity or nationality have been established.

(Doc. 18, exh. G at 2).[5] The memorandum further states that because the petitioner refused to provide credible information regarding his identity or nationality, it was unlikely either that removal would occur in the immediate future or that petitioner would be released.

Via a Decision to Continue Detention dated December 28, 2001, the petitioner was notified that he would not be released because he had hindered removal efforts by not revealing his true identity. (Doc. 18, exh. H).[6] The decision noted that since petitioner's arrest he had claimed to be Danish, French, Spanish, and most recently Cuban.[7] "This refusal to document your true identify has resulted in the suspension of your removal period." (*Id.*). Petitioner was advised that the statute required his cooperation in good faith with the INS to obtain the necessary papers for his repatriation, and that it was his responsibility to comply with the removal order. This decision was addressed to John Doe, aka Khalid Dennoul.

On April 18, 2002, petitioner was served with a copy of a letter regarding his request for review for a custody re-determination. (Doc. 18, exh. I). This letter was addressed to Mario Rivera-Perez. In the letter, petitioner was reminded of his obligations to cooperate with the service and to take positive measures to facilitate

---

[5]Petitioner makes reference in his reply brief to the government's purported belief that he is from Algeria, North Africa and notes that the government has been unable to prove this.

[6]Petitioner claims in his reply brief that this is a "made up document." (Doc. 19 at 10).

[7]Petitioner does not acknowledge or address the fact that he claimed French and Spanish citizenship. He does state that he told Special Agent Donald Buechner that he lived in Spain between 1972 and 1976 and in France between 1976 and 1998. (Doc. 19 at 10).

his removal from the United States, and that *he* had the burden to show there is no significant likelihood of repatriation in the reasonably foreseeable future. (*Id.*)

On March 28, 2003, petitioner was advised via a Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g) that due to his continued failure to comply with his obligation to tell the truth about his citizenship, the BICE concluded he was acting to prevent his removal from the United States, and therefore, his removal period was extended. (Doc. 18, exh. J). Because he was still within the removal period, the notice indicated that petitioner would remain in Service custody until he demonstrated that he was making reasonable efforts to comply with the order of removal and that he was cooperating with the Service's efforts to remove him. He was warned that certain non-cooperative actions could subject him to criminal prosecution. *Id.*

Petitioner was served with a Warning for Failure to Depart on September 24, 2004. (Doc. 18, exh. K). The warning advised him, among other things, that he could continue to be detained and his removal period could be extended due to his failure to apply in good faith for travel documents. Appended to the warning was a list of things petitioner was required to do within thirty days in order to fulfill his obligation to assist in obtaining a travel document. *Id.* The record does not reflect that petitioner has complied with all of these.

Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida, Jacksonville Division in July of 2001, challenging his mandatory, indefinite detention. (Doc. 18, exh. L). The order of dismissal states that the petition was dismissed without prejudice. (Doc. 18, exh. M). The Eleventh Circuit affirmed on April 29, 2003, stating that:

> Petitioner's allegations concerning his inability to obtain documentation necessary for departure from the United States and the nominal attempt he made to obtain that documentation fail to show his detention is outside the purview of § 1231(a)(1)(C)'s mandatory detention requirement for aliens who fail to make timely application in good faith for documents necessary for departure from the United

**States. Additionally, because petitioner alleged only a token effort to obtain the necessary documentation, he failed to show he is being detained when there was no significant likelihood of removal and, thus, fails to show that his detention is unconstitutional.**

(Doc. 18, exh. N at 5-6).[8]

The government states that petitioner's continued detention is proper because he has failed to establish that his removal is not foreseeable. Title 8 U.S.C. § 1231 provides for detention of aliens after a final order of removal during a "removal period" which is defined as beginning on the date that the removal order becomes final and continuing for 90 days thereafter. This removal period may be tolled, or extended if an alien fails to cooperate in the procurement of travel documents necessary to effect his removal as follows:

> SUSPENSION OF PERIOD--the removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien *fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.*

8 U.S.C. § 1231(a)(1)(C) (emphasis added).[9] Detention of the alien during the removal period is mandated. 8 U.S.C. § 1231(a)(2). The government argues that the petitioner's refusal to document his true identity and to provide verifiable evidence of his identity has resulted in the suspension of the removal period, and thus his continued detention.

The government distinguishes the situation in *Zadvydas v. Davis*, 533 U.S., 121 S.Ct. 2491 (2001) from the instant case because here, the alien petitioner's willful

---

[8] The government has not argued that the instant petition is precluded by the petitioner's previous attempts to litigate the legality of his continued detention.

[9] The government notes in its memorandum that the Act requires that an alien make timely application in good faith for travel and other documents necessary to his departure and imposes criminal penalties for a willful failure to do so. 8 U.S.C. § 1253(a)(1). However, there is nothing in the record suggesting that there have ever been any attempts to prosecute the petitioner.

actions in concealing his true identity have prevented his removal.  Furthermore, the *Zadvydas* court addressed not detention during a valid removal period, but continued detention <u>after</u> the conclusion of the removal period.  See *Lema v. I.N.S.,* 341 F.3d 853, 856 (9th Cir. 2003).  Petitioner's removal period has not ended in this case, according to the government, due to petitioner's own actions.   The *Zadvydas* Court found that release is only compelled if the alien shows good reason to believe that there is no significant likelihood of accomplishing removal in the reasonably foreseeable further and the government fails to rebut that showing.  *Zadvydas*, 121 S.Ct. at 2505.  The burden is therefore on the petitioning alien to show no likelihood of accomplishing removal, not the other way around.  A "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Lema*, 341 F.3d at 856 (quoting *Pelich v. INS*, 329 F.3d 1057, 1057 (9th Cir. 2003)).  "When an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Lema*, 341 F.3d at 856.  "A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal."  *Id*. at 856-857.  The respondent argues in this case that the petitioner has failed to make such a showing because he has failed to cooperate fully in establishing his identity with the Court.[10]  Therefore, his continued detention is not unconstitutional.

---

[10] Although the petitioner now claims that his is Mario Rivera-Perez, citizen and national of Cuba, it is not unreasonable for the BICE to consider his credibility to be suspect in light of the series of misrepresentations he made in his previous claims of Danish, French and Spanish citizenship.

Assuming for sake of argument that petitioner is Cuban,[11] the question presented is whether he has made legally sufficient efforts either to establish his identity or to secure travel documents such that the removal period should be suspended and he be released. The Eleventh Circuit affirmed the denial of the previous petition for writ of habeas corpus noting he made only a "nominal attempt" to obtain documentation necessary for departure, and that he therefore had failed to show he was being detained when there is no significant likelihood of removal. The evidence in the record suggests that the only steps petitioner has taken since the denial of his previous petition for writ of habeas corpus to secure evidence of his Cuban citizenship is to write to three branches of the Cuban government explaining his predicament. This is not a marked improvement over the "nominal effort" rejected by the Eleventh Circuit over two years ago. He does not indicate any attempts to contact relatives or friends that might be able to support his claim of national origin, or that he provided information to the BICE about individuals, as required. (Doc. 1, exh. 9). And, he does not proffer any explanation about why he has not done this. Finally, he does not have or at least has not presented any documents from the Cuban embassy establishing his Cuban citizenship, although he represented to the appellate court that he was in possession of same.

**Conclusion**

Petitioner was previously advised that because he was still within the removal period, he would remain in Service custody until he demonstrated that he was making reasonable efforts to comply with the order of removal and that he was cooperating with the Service's efforts to remove him. (Doc. 18, exh. J). Once he begins to cooperate in earnest and the removal period ends, the restriction on mandatory, indefinite detention established in *Zadvydas* would appear to begin. The

---

[11] The government maintains that petitioner's blanket assertion that as a Cuban citizen, he is entitled to immediate release because he could not be deported is incorrect. Numerous individuals have been removed to Cuba over the past several years. (Doc. 18, at 8, n.3, citing INS Statistical Yearbook).

**Eleventh Circuit previously rejected petitioner's efforts as "nominal" and petitioner has not shown any significant effort since that time to cooperate. Petitioner holds the clock in this case. See *Lema, supra*. Until he begins to cooperate in accordance with the BICE requirements, his continued detention is not unconstitutional.**

**Accordingly, it is respectfully RECOMMENDED:**

**That the petition for writ of habeas corpus (doc. 1) be DENIED.**

**At Pensacola, Florida, this 19th day of July, 2005.**

/s/ *Miles Davis*
                          **MILES DAVIS**
                          **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these findings and recommendations may be filed within ten days after being served a copy thereof. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:04cv379/LAC/MD*